## Arthur B. Greenwood, Administrator, Appellant, v. John R. Thompson Company, Appellee.

### Gen. No. 24,079.

1. SALES, § 388*—*what remedies available to one damaged by breach of warranty.* One who is damaged by a breach of warranty may bring an action on the case, based upon the alleged wrongful act of the defendant in committing the breach, or he may bring an action in assumpsit, based upon the contractual relation existing and defendant's failure to fulfil his express or implied promise of warranty.

2. SALES, § 398*—*non-necessity of alleging scienter in action on case for breach of warranty.* In an action on the case for breach of warranty, the gravamen of the action is not fraud and deceit, but the wrongful act of defendant in making a false warranty, and therefore *scienter* need not be alleged or proven.

3. INNKEEPERS, § 5*—*when liable for selling unwholesome food.* The law imposes upon a restaurant keeper an implied warranty that the food he serves and sells to his patrons is wholesome and fit to be eaten, and he will be liable if it proves otherwise, whether he was negligent or not.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. INNKEEPERS, § 5*—*when liable for selling unwholesome frank-furter sausages.* The rule that a restaurant keeper is liable for serving and selling unwholesome food, upon an implied warranty of its fitness, irrespective of any question of negligence, applies where the food involved is in air-tight casings, such as frankfurter sausages.

5. INNKEEPERS, § 5*—*when count in declaration in action for damages for sale of unwholesome food is sufficient.* A count of a declaration, in an action for damages against a restaurant keeper for the sale of unwholesome food, which, after setting-up the relation of restaurant keeper and patron, proceeds by saying, "Whereby the said defendant then and there warranted," etc., was sufficient upon demurrer, though it alleged neither an express warranty by defendant with knowledge that it was false, nor negligence on his part in preparing and serving the food in question.

6. DEATH, § 36*—*when count in action against restaurant keeper for damages for death of patron due to unwholesome food is sufficient.* A count in a declaration against a restaurant keeper for damages for the death of a patron as a result of being furnished with unwholesome food, which was based upon the alleged wrongful act of defendant in failing to fulfil the duty imposed upon it by law of serving wholesome food, is within the provisions of chapter 70, sec. 1, of the statutes (J. & A. ¶ 6184), and sets forth a cause of action which was good upon demurrer.

7. INNKEEPERS, § 5*—*when count of declaration in action for damages for death of patron due to unwholesome food is sufficient.* A restaurant keeper is engaged in selling the food served to patrons and therefore is within the provisions of section 7 of the Criminal Code (J. & A. ¶ 3445), applying to those who "sell or offer to sell or keep for sale any flesh of any diseased animal or other corrupt or unwholesome provision"; and a count of a declaration, in a suit for damages against a restaurant keeper for death of a patron from the sale of unwholesome food, which was based upon a violation of such statute, set up a good cause of action and the court erred in sustaining a demurrer thereto.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Reversed and remanded with directions. Opinion filed March 12, 1919.

SAMUEL G. HAMBLEN, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE THOMSON delivered the opinion of the court.

This is an action on the case brought by Arthur B. Greenwood as administrator of the estate of Clarence E. Greenwood, deceased, under section 1, ch. 70, Illinois Statutes (J. & A. ¶ 6184), by which he seeks to recover damages resulting from the death of the deceased, which is alleged to have been caused by the wrongful act of the defendant, John R. Thompson Company. The plaintiff filed a declaration consisting of three counts. To the first count, defendant pleaded the general issue and certain special pleas and to the second and third counts, pleas in abatement. The latter pleas were sustained and plaintiff had leave to file amended second and third counts, which he did. General demurrers were filed to these new counts and these were sustained and plaintiff excepted. Later defendant withdrew its pleas to the first count and filed a general and special demurrer thereto which was also sustained. Plaintiff elected to stand by the count and the trial court dismissed the suit. On this appeal by the plaintiff there is therefore involved, the question of the sufficiency of the three counts to which the trial court sustained demurrers.

In the first count of his declaration, the plaintiff alleges that the defendant was a restaurant keeper and that the deceased purchased certain food from him for immediate consumption in said restaurant,

"Whereby the said defendant then and there warranted that the said food so sold and delivered by it to the deceased was then and there good and wholesome food and safe to be eaten; but the said defendant, by its said agents and servants, then and there so carelessly, improperly and wrongfully served and sold the said food aforesaid to the said deceased when the said food was not then and there good and wholesome food, but * * * was, in fact, unwholesome, poisonous, dangerous and unfit to be eaten, * * * that by reason thereof, the said deceased, without knowledge or notice of any kind as to the condition of said food,

and relying on said warranty of the defendant that the said food was then and there good, pure and wholesome food and fit to be eaten, did then and there eat and partake of the said food  *  *  *  and by reason of the said deceased so eating such food aforesaid, he then and there became'' poisoned and died.

This is clearly a count in case for an alleged breach of an implied warranty, and not in assumpsit as defendant contends.  The warranty is not set up as a part of any alleged express promise made by defendant but the count, after setting forth the relation of restaurant keeper and patron, as existing between defendant and plaintiff's intestate, proceeds by saying, ''Whereby the said defendant then and there warranted,'' etc.

Where one is damaged by a breach of warranty, he has a choice of two remedies.  He may bring an action on the case, based upon the alleged wrongful act of the defendant in committing the breach, or he may bring an action in assumpsit based upon the contractual relation existing and the defendant's failure to fulfil his express or implied promise of warranty.  1 Chitty on Pleading, star pages 153, 154, 16th Am. Ed. p. 198; 35 Cyc. 444; 1 C. J. 1021; *Nevin v. Pullman Palace Car Co.,* 106 Ill. 222, 236.

The ancient remedy for a false warranty was an action on the case sounding in tort.  The remedy by assumpsit was adopted later and apparently to enable the pleader to be in a position to add the money counts. *Schuchardt v. Allen,* 1 Wall. (U. S.) 359, 368; *Vanleer v. Earle,* 26 Pa. St. 277, 279.

Where an action on the case is brought for breach of warranty, the gravamen of the action is not fraud and deceit but merely lies in the wrongful act of the defendant in making a false warranty and therefore *scienter* need not be alleged nor must it be proven.  The defendant may even have made the false warranty in perfect good faith and believing it to be true, but nevertheless he will be liable if the warranty

proves false, for in undertaking to warrant, whether that undertaking be in the form of his express promise, or a burden imposed upon him by the law as an incident to his occupation, he takes all the consequence of the falsity of the warranty, if it proves such, irrespective of whether or not he knew it to be false. 1 Chitty on Pleading, star page 403, 16th Am. Ed. p. 507; 1 C. J. 1021; *Schuchardt v. Allen,* 1 Wall. (U. S.) 359; *Williamson v. Allison,* 2 East 446; 2nd Am. Ed. vol. 1, p. 537, 539; *Trice v. Cockran,* 8 Gratt. (Va.) 442, 450; *Carter v. Glass,* 44 Mich. 154; *Arnold v. White,* 153 Mich. 607, 610; *Norton v. Doherty,* 3 Gray (Mass.) 372, 373; *Wallace v. Tanner,* 118 Ill. App. 639, 641.

In discussing this subject, in his work on the Common Law, Justice Holmes says:

"The question is, what known circumstances are enough to throw the risk of a statement upon him who makes it, if it induces another man to act, and it turns out untrue. Now, it is evident that a man may take the risk of his statement by express agreement, or by an implied one which the law reads into his bargain. He may in legal language warrant the truth of it, and if it is not true, the law treats it as a fraud, just as much when he makes it fully believing it, as when he knows that it is untrue, and means to deceive. If, in selling a horse, the seller warranted him to be only five years old, and in fact he was thirteen, the seller could be sued for a deceit at common law, although he thought the horse was only five. The common-law liability for the truth of statements is, therefore, more extensive than the sphere of actual moral fraud" (p. 135).

We therefore hold that it is not the law, as defendant contends, that an action on the case will lie for breach of warranty, only when the warranty is knowingly and deliberately false.

In further support of its demurrer to the first count the defendant contends that no implied warranty that the food it serves is good and wholesome is imposed upon the keeper of a restaurant by the law, but that

one so engaged is liable for damages caused by the eating of unwholesome or poisonous food only when it can be shown that the serving of such food is the result of negligence on the part of the keeper of the restaurant, and that the first count is demurrable inasmuch as it makes no charge of negligence.

It has been held repeatedly in this State that a retail dealer in foodstuffs, selling the same for domestic use and consumption, impliedly warrants that such food stuffs are sound and wholesome and fit to be eaten, and he is liable in damages if they prove to be otherwise, whether he was aware of their condition or not. These cases make an exception to the ordinary rule of *caveat emptor*, squarely upon the ground of public policy. *Wiedeman v. Keller*, 171 Ill. 99; *Sloan v. F. W. Woolworth Co.*, 193 Ill. App. 620; *Chapman v. Roggenkamp*, 182 Ill. App. 117. In the last two cases cited the rule is extended to apply to cases involving the sale of food in sealed cans.

The only authority in Illinois on the question of the liability of the keeper of a restaurant as distinguished from a so-called retail dealer is found in the case of *Sheffer v. Willoughby*, 163 Ill. 518. In that case the plaintiff brought an action of trespass on the case, alleging that she had been made ill by eating unwholesome food in the restaurant of the defendant. The action was based solely on the alleged negligence of the defendant, in preparing and serving the food in question. The court held that the negligence alleged was not proven by the evidence. The plaintiff claimed that having proven that she ate the oyster broth at defendant's restaurant, and in consequence became sick, her case is made out. The court, as to this contention says: "If this rule were adopted plaintiff would be relieved from proving the most important element of her declaration,—the negligence of defendants,—which is really the foundation of the action. This would, in effect, make the restaurant keeper an insurer. Such a rule is not correct on principle, nor

has it been sustained, so far as we are advised, by any respectable authority.''

At the time of this decision by our Supreme Court, the Appellate Court had rendered a decision in the case of *Wiedeman v. Keller* (58 Ill. App. 382), to the effect that,—when a vendor of provisions has no notice, and cannot, by the exercise of reasonable or ordinary care, ascertain its unwholesome or unsound condition, there is no implied warranty of the soundness of the provisions not prepared or manufactured by the vendor. The Supreme Court, in the opinion in the case of *Sheffer v. Willoughby, supra,* refers to the decision of the Appellate Court in *Wiedeman v. Keller, supra,* and says, ''under the rule laid down in the case cited, there could be no liability'' (in *Sheffer v. Willoughby*). After the decision of *Sheffer v. Willoughby* by the Supreme Court, that court decided the appeal from the Appellate Court in the case of *Wiedeman v. Keller,* and reversed this court, holding that there is an implied warranty as to the wholesomeness of the food sold by a retail dealer, the same Justice of the Supreme Court writing both opinions. In the opinion last referred to, the previous decision in *Sheffer v. Willoughby* is referred to, and the court says that it has no bearing on the case of *Wiedeman v. Keller,* as it ''was predicated by the plaintiff upon the sole ground of the negligence of the defendant.''

The only point before the court in *Sheffer v. Willoughby* was the question of whether the charge of negligence brought by the plaintiff was made out by the proof, and the reference to this decision which is made by the court in deciding *Wiedeman v. Keller* would seem to indicate that the court did not wish to be understood as passing upon any question beyond that, in deciding *Sheffer v. Willoughby.*

The authorities which bear directly on the question of whether the keeper of a restaurant is liable under an implied warranty that the food he furnishes pa-

trons is wholesome and fit to be eaten are not in accord. Those which hold that he is not so liable, but is merely liable for such damages as may be shown to be the result of his negligence, take the position that in serving a patron with food the innkeeper or restaurant keeper does not sell him the food but, adopting a quaint phrase found in *Parker v. Flint*, 12 Mod. 254, decided in 1701, they say that the restaurant keeper, "does not sell but utters his provision." Thus holding that food furnished by a victualer is not a sale, they say it is idle to seek analogies derived from implied warranties in sales of food by retail dealers. Beale on Innkeepers and Hotels, sec. 169; *Valeri v. Pullman Co.*, 218 Fed. 519; *Merrill v. Hodson*, 88 Conn. 314; *Friend v. Child's Dining Hall Co.* (Mass.), see dissenting opinion, 120 N. E. 407, 411.

On the other hand, the authorities which hold the restaurant keeper liable as an insurer under an implied warranty take the position that the transaction between the keeper of the restaurant and his patron does involve a sale of the food ordered and served. Among the authorities supporting the latter proposition are: *Commonwealth v. Worcester*, 126 Mass. 256; *Commonwealth v. Warren*, 160 Mass. 533; *State v. Lotti*, 72 Vt. 115; *People v. Clair*, 221 N. Y. 108; *Commonwealth v. Phœnix Hotel Co.*, 157 Ky. 180; *Commonwealth v. Miller*, 131 Pa. St. 118.

Among the cases that hold that inasmuch as the transaction of the restaurant keeper and his patron amounts to a sale, the former is in the same position as a retail dealer in food, and must be held to impliedly warrant that the food he serves and sells his patron is fit and wholesome, are *Leahy v. Essex Co.*, 164 N. Y. App. Div. 903, 148 N. Y. Supp. 1063; *Barrington v. Hotel Astor*, 171 N. Y. Supp. 840; *Friend v. Childs Dining Hall Co.* (Mass.), 120 N. E. 407.

In our opinion, this must be held to be the rule of law applying to restaurant keepers. Any other rule, as applied to modern restaurants, would be inconsist-

ent with the decisions of our Supreme Court involving the liability of retail dealers. No reason can be advanced for holding, with reference to many keepers of restaurants who conduct the business both of supplying food to patrons for immediate consumption by them on the premises and also to customers who carry it away and consume it elsewhere (such as we know the business of this defendant to be), that in the former situation the liability of the proprietor of the restaurant shall be limited to such damages as may be shown to result from his negligence, while in the latter situation he shall be liable under an implied warranty that the food he supplies the customers is wholesome and fit to be eaten and shall thus be liable for damages if the food proves otherwise, whether he was negligent or not.

The patron of the restaurant keeper who consumes his food on the premises is quite as helpless to protect himself against deleterious food as is the customer who takes the food he buys away from the premises and consumes it elsewhere. The opportunity for the restaurant keeper, who prepares and furnishes the food in both cases, to discover and provide against deleterious food is as ample in one case as in the other. *Friend v. Childs Dining Hall Co., supra.* And, in either of those cases involving the restaurant keeper, his opportunity would seem to be more ample than the case of the dealer who has nothing whatever to do with the preparation of the food.

That this rule should apply, where the food involved is in air-tight casings, such as frankfurter sausages, which in part made up the food served in the case at bar, follows from the decisions of our Supreme Court, applying the rule to dealers where the food involved was in sealed tin cans.

Our conclusion is that the first count of plaintiff's declaration set forth a good cause of action and that the demurrer interposed thereto by the defendant should have been overruled.

In the amended second count, the plaintiff alleged that the defendant was "engaged in the business of running, operating and conducting a restaurant * * * wherein it sold, vended and served to customers for an agreed price then and there paid, foods and viands for immediate consumption in its said restaurant, whereby it became and was the duty of the defendant to sell, vend and serve to customers so purchasing for immediate consumption therein, only good, safe, pure and wholesome food, and not poisonous or destructive to human life." It is therein further alleged that the plaintiff's intestate purchased and paid for certain food in the defendant's restaurant and that "the said food was not good, safe, pure, sound, healthful and wholesome food and fit for human consumption, but was in fact unwholesome, impure, poisonous and destructive to human life," and that as a direct result of the consumption thereof by said intestate he became sick and died.

It will be seen that this count is not based upon the alleged breach of an implied contract but upon the alleged wrongful act of the defendant in its failure to fulfil the duty imposed upon it by law as to plaintiff's intestate as one of its patrons. The selling and serving of wholesome food is alleged in the count as a duty imposed on the defendant by law. The failure of the defendant to fulfil that legal duty is the wrongful act complained of. The action is therefore within the provisions of chapter 70, sec. 1, of our statutes (J. & A. ¶ 6184) and the count set forth a good cause of action and the demurrer interposed by the defendant should have been overruled.

The amended third count, after the opening allegations, states, "that there was then and there in full force and effect a certain law of the State of Illinois providing that no one should sell any flesh of any diseased animal, or other corrupt or unwholesome food or provision, but that disregarding the rights of the

deceased and the said statute the said defendant did then and there sell, vend and serve to said deceased such food aforesaid, which was then and there, unknown to said deceased, unwholesome, impure, poisoned and unfit for human consumption, and that the deceased partook thereof, and then and there, as a direct result of such wrongful act and default of defendant, became and was sick," and so on.

In support of this count, plaintiff says he is relying on the provisions of section 7, of the Criminal Code (J. & A. ¶ 3445) and also the Pure Food Law of 1907. The statute first referred to has to do, among other things, with those who "sell or offer to sell or keep for sale any flesh of any diseased animal or other corrupt or unwholesome provision." If one acts contrary to the provisions of such a statute as this, it gives rise to an action at law for damages on the part of any person injured thereby. *United States Brewing Co. v. Stoltenberg,* 211 Ill. 531; *H. Channon Co. v. Hahn,* 189 Ill. 28; *Cada v. The Fair,* 187 Ill. App. 111; *Sloan v. F. W. Woolworth Co.,* 193 Ill. App. 620; *Wistafka v. Grotowski,* 205 Ill. App. 529.

In our opinion, the language of the statute referred to must be held to apply to the keeper of a restaurant as well as to one who merely sells the articles referred to. While the restaurant keeper performs a service in the preparation and serving of the food ordered by his patrons, under the authority of the cases we have heretofore referred to, we hold that he also sells to him the food which the latter consumes. *Commonwealth v. Worcester, supra; Commonwealth v. Warren, supra; State v. Lotti, supra; People v. Clair, supra; Commonwealth v. Phœnix, supra; Commonwealth v. Miller, supra.*

It follows that this count set up a good cause of action and the trial court erred in sustaining the demurrer thereto.

For the reasons stated the judgment of the Superior

Court is reversed and the cause remanded to that court with directions to overrule the demurrers to the first and the amended second and third counts of the declaration filed herein.

*Reversed and remanded with directions.*