Jean Elizabeth Duncan, Appellee, v. Martin's Restaurant, Inc., Appellant.

Gen. No. 45,648.

Opinion fiiled May 20, 1952. Released for publication July 1, 1952.

MORRIS A. HAFT, of Chicago, for appellant.

HASKINS, MAGUIRE & HASKINS, of Chicago for appellee; CHARLES G. HASKINS, and C. W. ECKERT, both of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an action by the plaintiff, Jean Elizabeth Duncan, against the defendant, Martin's Restaurant, Inc., for personal injuries alleged to have been sus-

tained as the result of having eaten food, alleged to be unwholesome, served by the defendant to her in its restaurant in Chicago, Illinois, as a result of which plaintiff became sick and suffered premature labor of a child which lived approximately fifty hours.

The case was tried before a jury and defendant moved for a directed verdict at the close of plaintiff's case and at the conclusion thereof the evidence and motions were overruled and the cause submitted to a jury, which found the defendant guilty and assessed plaintiff's damages at the sum of $5,000. Judgment was entered on the verdict. Defendant moved the court for a judgment notwithstanding the verdict or in the alternative for a new trial, both of which motions were overruled. From this judgment and the order overruling defendant's motion for a judgment notwithstanding the verdict and for a new trial, defendant perfected this appeal.

As grounds for reversal defendant contends (1) that there is no proof that the food served by defendant was unwholesome or unfit for human consumption, and that there is no proof that the illness of plaintiff was due to food eaten in defendant's restaurant; (2) that the medical testimony on behalf of plaintiff was based on mere guess, surmise and conjecture and usurped the province of the jury; (3) that one of the instructions given by the plaintiff was prejudicial and constituted reversible error, and (4) that the verdict and judgment were grossly excessive.

As to the defendant's first contention that there is no proof that the food served by defendant was unwholesome or unfit for human consumption and that there is no proof that the illness of plaintiff was due to food eaten in defendant's restaurant, the onus of proving this was on the plaintiff.

The record reveals that on the evening of August 24, 1948, the plaintiff, who was pregnant, attended a

baby shower given for her at defendant's restaurant at 120 South La Salle street, Chicago, Illinois, where she and sixteen of her girl friends ate identical dinners. This was the only meal they all ate in common. The meal was not specially prepared but was served from the regular menu. Plaintiff testified that the morning following the dinner she awakened suffering from diarrhea and cramps like a stomach disorder in the abdomen that were different from anything that she had experienced before. She did not, however, call a physician until the evening of August 27 when she experienced uterine contraction and intermittent pains. On the morning of August 28 a seven-months premature male child was born.

In addition to the plaintiff, three of her friends, who attended the dinner on August 24, testified that the night and the morning after the dinner they experienced stomach cramps, diarrhea and some of them vomited a little. One witness stated that the next day she noticed that the girls who attended the party were constantly having to go to the washroom when they were supposed to be working. On recross-examination she said she knew that a total of eleven girls experienced similar difficulties that evening and the following morning. She found this out by checking with the other women who attended the party. No witness testified that there was anything about the taste or color of the food to indicate that it was unwholesome.

The only testimony submitted on behalf of the defendant pertaining to the food was that of its supervisor who testified that between 75 and 100 other guests and a number of defendant's employees had eaten similar dinners; that no complaint of the food or of a resulting sickness was received by the defendant from any of the other guests or from any of its employees, other than plaintiff. No other employees or guests testified on behalf of defendant.

■
■

■ The law imposes upon a restaurant keeper an implied warranty that the food he serves and sell's to his patrons is wholesome and fit to be eaten, and he will be liable if it proves otherwise, whether he was negligent or not. *Greenwood v. John R. Thompson Company*, 213 Ill. App. 371; *Sweany and Maloney v. Walgreen Co., Inc.*, 323 Ill. App. 439. Where eleven out of sixteen guests of a restaurant consuming a common meal are shown to have developed cramps, diarrhea and vomiting it would not be in the realm of speculation to conclude that some of the foods consumed in common were unwholesome. It is true that in all of the cases cited by the defendant there was some testimony to the effect that either the food did not taste right or that there was discoloration or that foreign substances had been found in the containers from which the food came. In no instance, however, does the court hold that before food can be found to be unwholesome there must be some indication of its unfitness either by taste, smell or appearance. With this in mind, to adopt this rule as contended for by defendant would, for all practical purposes, nullify the implied warranty of the restaurant owner as to the food he serves.

The language of this court in *Rost v. Kee & Chapell Dairy Co.*, 216 Ill. App. 497, 504, is particularly apropos:

"Bearing their verdict and the evidence in mind, we may ask, how may it be said, within the bounds of reason, that any one was to blame but the defendant? It seems like playing with fanciful conjectures, to say that it might be attributed to some other agency and that the plaintiff has not reasonably made out a case. Absolute, positive, ocular proof, the law, wisely, does not require. . . . Circumstantial evidence, such as exists here, and by which the mind is impelled to make certain deductions, is sufficient. Of course, we may be

187

wrong, but as long as by the evidence we are persuaded that we are right, that must suffice. That the law requires, and only that."

■ There was sufficient evidence for the jury to conclude that the food served plaintiff was unwholesome and that she became ill as a result of eating it.

■ ■ As to the hypothetical question asked the doctor, it is generally considered necessary to resort to medical testimony to prove a causal connection between the occurrence complained of and the alleged injury or illness. *Blarjeske v. Thompson's Restaurant Co.*, 325 Ill. App. 189. It is proper to permit an expert to testify that certain things might or could be caused by a given set of facts. *Fellows-Kimbrough v. Chicago City Ry. Co.*, 272 Ill. 71; *Davis v. East St. Louis & Suburban Ry. Co.*, 290 Ill. App. 540.

■ ■ In this case the ultimate fact for determination was whether or not the food served the plaintiff by the defendant was wholesome. Plaintiff's witness, Dr. Petrakos, testified that he first examined the plaintiff in May and established that she was pregnant. He saw her subsequently monthly. The last examination before the incident complained of was on August 13, 1948, when he found no abnormal findings. He did not see her again until two or three days after the birth of the child. In answer to a hypothetical question he stated that in his opinion there was a causal relationship between the condition of ill-being and the food eaten as set forth in the hypothetical question. Allowing the doctor to state his opinion that there might or could be a causal connection between the condition of ill-being described and the facts stated in the hypothetical question was not an invasion of the province of the jury. *Illinois Central R. Co. v. Smith*, 208 Ill. 608; *Hellyer v. People*, 186 Ill. 550. The doctor as such was qualified to give his opinion as to the cause of the condition of ill-being described in the question propounded

to him, and his opinion, from a medical view standpoint, based upon the facts given could hardly be called a mere guess unsupported by the evidence. The objection of the defendant that plaintiff in the hypothetical question assumed that fourteen girls suffered from stomach distress, cramps and diarrhea after eating the meal was not made at the time the question was propounded and therefore such objection was waived. *Chicago Union Traction Co. v. Roberts,* 229 Ill. 481.

 Defendant, on appeal for the first time raises an objection to one of the instructions given by plaintiff. In its motion for a new trial defendant failed to specify any of the grounds of alleged error in giving the instruction complained of tendered by the plaintiff. The defendant, therefore, must be deemed to have waived such alleged error and it now is too late for it to object. *Patargias v. Coca-Cola Bottling Co. of Chicago, Inc.,* 332 Ill. App. 117.

 Defendant's last objection is that the sum of $5,000 awarded by the jury is unreasonable and grossly excessive. The testimony showed that a month prior to the dinner in question plaintiff quit her job at Marshall Field & Company on advice of her physician because of her existing pregnancy. She suffered diarrhea and stomach cramps for one day. Three days after eating the meal she gave birth to a seven-months-old child. She returned to work early in November of 1948, two and one-half months after the miscarriage. There is no showing in the record that the child's death was caused by reason of its premature birth or because she had eaten a meal at defendant's restaurant. There is no showing that the pain of childbirth is any greater in cases of premature birth than in those occurring at the termination of the normal period. Plaintiff incurred a doctor bill of $75 and a hospital bill of $120. An examination of the cases cited by plaintiff to sustain the amount of the judgment does

not reveal any case such as we have here, where a short period of pain and suffering and the miscarriage were the sole elements of damage sustained. Plaintiff admits that she cannot recover damages for the death of a child occasioned by prenatal injuries or for the death of a child due to a miscarriage. Plaintiff can recover for pain and mental anguish as a consequence of the injury and miscarriage, *Braun v. Craven*, 175 Ill. 401; *Haas v. Metz*, 78 Ill. App. 46; *Brownback v. Frailey*, 78 Ill. App. 262, but not for anguish of mind, wholly sentimental, caused by the loss of a child through miscarriage. *Chicago, Burlington & Quincy R. Co. v. Hines*, 45 Ill. App. 299; *Meunier v. Chicago & Carterville Coal Company*, 180 Ill. App. 114.

 It is unquestionably difficult to place a monetary value on the actual damage sustained by the plaintiff in this particular case. We do not, however, find any case involving a similar situation where there was a verdict as large as this. We realize that the value of the dollar has depreciated and that plaintiff is entitled to adequate compensation but not excessive compensation. Considering all the facts involved, we are of the opinion that the verdict was somewhat excessive.

Judgment entered here for plaintiff and against defendant in the sum of $3,500 if the plaintiff shall within ten days file in this court a remittitur in the sum of $1,500; otherwise the judgment is reversed and the cause remanded to the superior court of cook county for a new trial.

*Judgment affirmed upon remittitur of $1500; otherwise judgment reversed and cause remanded.*

TUOHY, P. J. and SCHWARTZ, J., concur.